### GRACE A. STOKES ET AL. *v.* S. W. STOKES ET AL.

1. WILL. *Power of execution under. Disposing of property.*

   Where a will confers on an executor authority to "sell and dispose of any of the property bequeathed in this will, when it shall appear to him to be advisable so to do, having an eye to the support and education of the children," the executor may convey a portion of the lands devised in discharge of a valid debt of the testator.

2. CONVEYANCE BY EXECUTOR TO PAY CONTROVERTED DEBT.

   And under such a power, even if the debt asserted against the estate be a controverted one, if there is a probability that it will be established against the estate, the executor may discharge it by a conveyance of land. He may fairly assume that it is "advisable" under such circumstances so to dispose of part of the estate to relieve the remainder.

APPEAL from the chancery court of Leake county.

HON. T. B. GRAHAM, Chancellor.

The facts sufficiently appear in the opinion.

*Downs & Ward,* for appellant.

The sale of the land by the executor was made to satisfy a debt for which we insist the evidence shows the separate estate of A. P. Stokes was liable.

There is no doubt that the will confers the power to sell for cash or for money and on credit perhaps. Now if he could sell for money, will this court not sustain a sale made for the equivalent of money? The only limitation, or rather admonition to the executor in reference to a sale was that, in making a sale, he must not forget the education and support of the children.

*Calhoon & Green,* on same side.

It was far more to the interest of the children to convey that part of the lands, which was conveyed in payment of the debt, than to lose all their personal property.

There was no question that Mrs. Stokes could bind herself and her separate estate in the way she endeavored to do. Code 1871, §§ 1780, 1788. It will be noted that the trust-deed to secure the debt covered only personalty, and that this personalty was not "encumbered by the husband," in the language of the statute, but

by the *wife, for debt.* She had the right to do this, and there is nothing in § 1778, code 1871, to prevent it. Therefore her personalty, all of it, was bound for the debt, if the consideration was for money to supply the plantation, and if the money was so used, about which there can be no doubt, certainly the claim was a valid charge at one time against her estate.

Did the executor under the power granted in the will have authority to convey the land in satisfaction of this debt against the estate?

This very will was construed in *Stokes* v. *Payne,* 58 Miss. 614. There it was held that the power to "sell and dispose of" did not include the power to mortgage, even for necessary supplies for the children. We doubt not that a misconception of the scope of this decision by the chancellor, the same who also tried that case, produced the decision in the case at bar.

Of course the executor might convey outright for money "any of the property bequeathed, when it shall appear to him to be advisable so to do, having an eye to the support and education of the children." The word "bequeathed" is manifestly not used in a technical sense, and this court in the reported case did not so intimate.

Here the executor did sell the land straight out in payment of a debt which was a valid charge against the estate. It would be a strained construction of this will to hold that he did not have this power.

Clearly the executor could have sold it for the amount of the debt in *cash,* and immediately have paid this debt with the money, "having an eye to the support and education of the children." If so, he could have conveyed it for the debt.

*J. K. Hamblen,* on same side, filed a lengthy written argument reviewing the evidence to show that the debt paid by the executor in the conveyance was a valid debt of Mrs. Stokes' estate, and that it was very "advisable" for the executor to have discharged it, by a conveyance of part of the land, in order to save the remainder of the estate from being subjected to its payment.

*Raymond Reid,* for appellee.

The debt to R. F. Stokes, made in 1876, was for borrowed money. M. M. Stokes and A. P. Stokes gave a trust-deed on chattels to secure its payment. The trust-deed was accepted by R. F. Stokes as a security for the money loaned. It was his own fault if he did not make the money upon the deed of trust. Only the chattels embraced in the trust-deed, of the estate, were bound for this debt.

Besides, M. M. Stokes swears that the debt was his, and the money was borrowed by and used by him. If so, it was not a debt of the estate of his wife, A. P. Stokes. The income of her separate property ceased to be liable at her death. *Erwin* v. *Hall*, 47 Miss. 677 ; Code 1871, § 1778; *Reed* v. *Coleman*, 51 Miss. 835.

There is no evidence that the money was borrowed or used by A. P. Stokes, the wife. Quite the contrary. Under the code of 1871 she could not bind herself or estate for borrowed money for her husband. 51 Miss. 371 ; 52 Miss. 169. If it was obtained by her for any purpose for which, under the law, she could bind herself, the burden of showing this was on defendants, the persons asserting her liability.

But, if it be conceded that this debt was a debt due by Mrs. Stokes, it became a mere debt against her estate, and should have been probated and allowed, and an order made by the proper court to sell property to pay it.

The power in the will did not authorize the executor to convey this land to R. F. Stokes. The power given was limited—" sell or dispose of" the land " having an eye to the support and education of the children," who were the devisees. In *Stokes* v. *Payne Kennedy & Co.*, 58 Miss. 618, this grant of power was construed and held not unlimited. The limitation must have been by the words " having an eye to the support and education of the children." Otherwise the power was unrestrained, and the executor could have sold or disposed of it for any purpose, or in any way or on any terms. The gift of the property to the children would be thus defeated.

But, in any event, the will did not confer power to sell in payment of old debts, made in the lifetime of the decedent. The

operation of the will was to be prospective and not retrospective; for the future support of the children, not the payment of old and doubtful debts, especially those once well secured, and whose security was lost by the negligence of the creditor.

COOPER, J., delivered the opinion of the court.

The land in controversy is a part of the estate of Mrs. A. P. Stokes, who died testate in 1877. By her will she devised and bequeathed her whole estate to her children in equal parts, and appointed her husband, M. M. Stokes, executor, without bond or surety, conferring upon him authority to "sell and dispose of any of the property bequeathed in this will, when it shall appear to him to be advisable so to do, having an eye to the support and education of the children."

Soon after the death of the testatrix, M. M. Stokes, executor, conveyed to R. T. Stokes the land in controversy, reciting as the consideration therefor the discharge of a debt due to said R. T. Stokes for money loaned by him to the testatrix and used by her in the purchase of supplies for her family and plantation. R. T. Stokes conveyed a portion of the lands to other parties and died. The present bill is exhibited by the children of Mrs. A. P. Stokes seeking cancellation of all the conveyances as clouds upon their title, and this relief having been decreed by the court below, the defendants appeal. The view we have taken of the rights of appellees renders it unnecessary to notice the relief prayed by the defendants as cross-complainants.

The principal controversy between the parties in the court below seems to have been as to whether the debt to R. T. Stokes, the grantee of the executor, was the debt of Mrs. A. P. Stokes or of her husband, M. M. Stokes. There is evidence tending strongly to prove that the money was borrowed on the credit of Mrs. Stokes and used by her in defraying the expenses of her plantation. On the other hand, M. M. Stokes positively swears that it was borrowed by himself and expended by him in his own affairs. But, to say the least of it, the evidence establishes the facts that the debt was recognized by Mrs. Stokes as her own, was asserted by

the creditor to be hers, and was at the time so considered and dealt with by the executor. The probability that it would be fixed by the creditor as a charge upon the whole estate was great enough to warrant the executor, acting under the liberal power conferred by the will, in discharging it by the conveyance of the parcel of land in controversy. His power to convey was not dependent upon an absolute or apparent necessity, but might be exercised when it should "appear to him to be advisable so to do." Unquestionably he could, within the power, have sold either personalty or land (and have elected which to sell first) for the discharge of debts due by the testatrix, and where the probabilities were as great as they appear to have been here, that the debt asserted against the estate would be established, he might, as he did, fairly assume that it was "advisable" to sell a part of the estate to relieve the remainder.

On the facts disclosed the complainants were not entitled to any relief.

*The decree is reversed and bill dismissed at the costs of complainants in this court and the court below.*